J-S23004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT WILLIAM WILSON | : | |
| | : | |
| Appellant | : | No. 1663 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 11, 2013
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004712-2012

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 01, 2020**

Appellant Albert William Wilson appeals from the judgment of sentence imposed following his jury trial convictions for burglary, conspiracy, receiving stolen property (RSP), and driving under suspension.[1] On appeal, Appellant challenges the sufficiency of the evidence, the trial court's jury instructions, and the discretionary aspects of his sentence. We affirm.

We adopt the trial court's summary of the facts and procedural history relevant to this appeal. *See* Trial Ct. Op., 10/2/19, at 1-3.

Appellant raises the following issues for our review:

1. Evidence introduced at trial showed that Appellant was seen standing behind his co-defendant as the co-defendant used a crowbar to pry open a door to the house; Appellant was then seen moving away from the house with the co-defendant. Was the evidence therefore sufficient to convict Appellant for

---

[1] 18 Pa.C.S. §§ 3502(a), 903, 3925(a), and 75 Pa.C.S. § 1543(b)(1), respectively.

burglary and criminal conspiracy, where the evidence established nothing more than mere presence and flight?

2. Did the trial court commit error of law and abuse its discretion when during its instructions to the jury, the [trial] court recited certain facts [that] the trial court stated showed the overt acts necessary to convict Appellant of the crime of conspiracy?

3. Did the trial court commit error of law and abuse of discretion and deprive the Appellant of his right to due process of law by imposing a sentence for receiving stolen property, the statutory minimum and maximum, which substantially exceeded the applicable sentencing guidelines, based at least in part on the court's finding that Appellant actually committed an unrelated crime which he was never charged?

Appellant's Brief at 4.

In his first claim, Appellant challenges the sufficiency of the evidence supporting his convictions for burglary and criminal conspiracy. *Id.* at 17. Appellant argues that the evidence established that he was standing behind his co-defendant when the co-defendant broke into the home and that "Appellant was seen by the first responding officer moving quickly away from the house some time later." *Id.* at 18. He claims that "[n]o evidence was introduced demonstrating that Appellant entered the home, took possession of stolen or goods or in any way assisted [the] co-defendant." *Id.* Appellant concludes that "in short, the Commonwealth demonstrated nothing more than Appellant's presence at the scene and flight therefrom." *Id.* at 18.

The Commonwealth responds that the evidence was sufficient to convict Appellant of both burglary and conspiracy, as an eyewitness "observed [Appellant] with his co-conspirator attempting to pry open a homeowner's door." Commonwealth's Brief at 12. The Commonwealth contends that it

"need not disprove every possibility of innocence on appeal, and the inference that [Appellant] and his co-conspirator were attempting to break into the home was a logical inference supported by the evidence." *Id.* at 15. Further, the Commonwealth argues that "this was not a 'mere presence' case." *Id.* Instead, the Commonwealth asserts that the evidence demonstrated that "[Appellant] and his co-conspirator [used] a crowbar to try to break into a home and that they ransacked it while inside, stealing items" and "[b]oth men arrived on scene in [Appellant's] van, which was full of stolen merchandise" and "both men were wearing the same gloves." *Id.* at 15-16.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted), *appeal denied*, 204 A.3d 924 (Pa. 2019).

Here, based on our review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op. at 17-20. Accordingly, Appellant is not entitled to relief.

In his next claim, Appellant challenges the trial court's jury instruction on conspiracy. Appellant's Brief at 22. Specifically, Appellant argues that the trial court erred by giving the alternative instruction at Section 12.903(B) of the Pennsylvania Suggested Standard Criminal Jury Instructions, which included an explanation of "facts from which [the jury] could find an overt act necessary to prove the crime of conspiracy."[2] *Id.* at 24 (citing Pa. SSJI (Crim) § 12.903(B) (2016)).

Appellant contends that the detailed instruction was unnecessary, as his case was "relatively uncomplicated" and "the evidence belied the need for a further explanation of the overt acts." *Id.* at 26. Appellant argues that the instructions "had the effect of unfairly highlighting certain facts." *Id.* Appellant also claims that the instruction was "factually inaccurate as it

_____

[2] Appellant refers to the following portion of the trial court's instruction:

> The information alleges that the following actions were overt acts in furtherance of the conspiracy. Driving the van to the scene of the burglary. Being present when [Appellant's co-defendant] broke in through the French door. . . . These are the alleged acts, alleged. Perhaps entering the house as well and performing the actions there. But as far as conspiracy is concerned, the overt acts that were alleged to have happened, have to be in furtherance of the conspiracy.

N.T. Trial, 4/11/13, at 61.

- 4 -

advised the jury that the Commonwealth had charged by way of information that Appellant had committed certain acts in furtherance of the conspiracy." *Id.* Finally, Appellant contends that the trial court "incorrectly informed the jury that Appellant himself had committed an overt act simply by being present when another person committed a crime." *Id.* at 27.

The Commonwealth responds that "the instructions, read as a whole, show that the trial court was simply outlining the allegations against" Appellant. Commonwealth's Brief at 16. Further, the Commonwealth contends that "consistent with [Appellant's] theory of the case," the trial court instructed the jury "that [Appellant] could not be found guilty of either crime if he was merely present at the crime scene." *Id.* Further, the Commonwealth "disagrees with [Appellant's] interpretation" of the jury instructions, asserting that the trial court provided "a fact that could be used as an example of an overt act, [and] did not offer any opinion as to whether the fact was proven or whether [Appellant] was guilty." *Id.* at 18.

When reviewing a challenge to jury instructions, this Court will "reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 799 (Pa. 2009) (citation omitted). Further, we have explained:

> An appellate court must assess the jury instructions as a whole to determine whether they are fair and impartial.
>
> > The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

- 5 -

*   *   *

>   We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.

>   For an appellant to be entitled to a new trial, the jury instruction must have been fundamentally in error, or misled or confused the jury.

**Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (citations and some formatting omitted).

Here, based on our review of the record, we discern no abuse of discretion or error of law by the trial court. **See Galvin**, 985 A.2d at 799. The trial court thoroughly addressed Appellant's challenge to the jury instructions and concluded that it was meritless. **See** Trial Ct. Op. at 20-24. Therefore, we affirm on the basis of the trial court's analysis of this issue. **Id.**

In his third issue, Appellant raises an issue relating to the discretionary aspects of his sentence. Appellant's Brief at 30. Specifically, Appellant argues that the trial court abused its discretion by sentencing him to the statutory maximum for RSP. **Id.** Appellant asserts that his sentence for RSP "exceeds the applicable sentencing guidelines, is unreasonable[,] and [that] no adequate reason was given by the sentencing court for a sentence in excess of the sentencing guidelines." **Id.** Appellant also claims that the trial court "relied on an impermissible factor," because "the sentencing court found that Appellant had committed an unrelated burglary, for which Appellant was not

charged, and sought to punish Appellant for the unrelated burglary by imposing the statutory maximum sentence for [RSP.]" *Id.*

The Commonwealth responds that Appellant is citing "to an offhand remark by the trial court . . . in an attempt to upset the [trial] court's sentence for the RSP conviction." Commonwealth's Brief at 19. The Commonwealth argues that the trial court provided "ample support" for its sentence, "including the fact that [Appellant] was on probation for RSP when he was convicted of RSP and that [Appellant's] criminal history indicated he was a 'professional burglar' unamenable to rehabilitation." *Id.*

Appellant's claim relates to the discretionary aspects of his sentence. *See Commonwealth v. Downing*, 990 A.2d 788 (Pa. Super 2010) (stating that a claim that the trial court relied on improper factors when imposing a sentence implicates the discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

Here, Appellant preserved his sentencing claim in a post-sentence motion, filed a timely appeal, and included a Rule 2119(f) statement in his brief. *See id.* Further, Appellant's claim that the trial court relied on an improper sentencing factor raises a substantial question for our review. *See Downing*, 990 A.2d at 792. Therefore, we may consider the merits of Appellant's claim.

Our review is governed by the following principles:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but is not bound by the Sentencing Guidelines. . . . A court may depart from the guidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. When a court chooses to depart from the guidelines however, it must demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Further, the court must provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.

> When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was

- 8 -

reasonable. An appellate court must vacate and remand a case where it finds that the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (citations omitted and formatting altered). However, "[e]ven if a sentencing court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." ***Id.*** at 192 (citations omitted).

Here, based on our review of the record, we discern no abuse of discretion by the trial court. ***See id.*** at 190. The trial court thoroughly addressed the factors it considered when imposing Appellant's sentence for RSP and provided significant support for its departure from the sentencing guidelines. ***See*** Trial Ct. Op. at 24-28. Therefore, we affirm on the basis of the trial court's analysis of this issue. ***Id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/20

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
COMMONWEALTH OF PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      NO.: CP-23-CR-4712-2012

         v.          :

ALBERT WILSON      :      1663 EDA 2019

## OPINION

**Cappelli, J.[1]**              **October 2, 2019**

Appellant, Albert Wilson, appeals from the July 11, 2013 Judgment of Sentence.[2]

## I. INTRODUCTION

On May 30, 2012, officers from Delaware County CID and Aston Township Police Department arrived at 889 Red Hill Road, Aston, Delaware County, Pennsylvania responding to a report of a burglary. The officers arrested Appellant and his co-conspirator, Andrew Zampitella, who were running out from the back of the house. The officers observed broken rear doors, a pry bar, and a pillow case filled with jewelry boxes immediately inside the house. The shoes worn by the co-conspirator also appeared to match a print from an earlier May 22, 2012 burglary in Aston Township. The police obtained a search warrant to search Appellant's van,

---

[1] Honorable Michael F.X. Coll, who presided over the jury trial in this case, now is a senior judge in the County of Delaware; this case was reassigned to Honorable Richard M. Cappelli.

[2] Upon consideration of Appellant's June 15, 2015 Motion for Post Conviction Relief and January 17, 2019 Amended Petition for Post Conviction Relief, and following a hearing on Appellant's Motion, counsel entered a stipulation, accepted by this Court, reinstating Appellant's direct appeal rights.

which contained a pillow case filled with items later identified as stolen a short while earlier on May 30, 2012 in a burglary in Upper Darby Township. As a result, Appellant was charged with, *inter alia*, Burglary, Conspiracy, Receiving Stolen Property, and Driving Under Suspension (DUI related)[3].

On April 11, 2013, following a jury trial presided over by the Honorable Michael F.X. Coll, Appellant was convicted of burglary, conspiracy to commit burglary of a building adapted for overnight accommodations while a person was present, and receiving stolen property with value in excess of $2,000.00. In addition, the trial court found defendant guilty of the summary offense of driving under suspension, DUI related.

On June 17, 2013, the court imposed sentence on Appellant[4], and Appellant filed a motion for reconsideration. July 11, 2013, Appellant received the following sentence:

| Charge | Grading | Statute/Crimes Code | Sentence |
|---|---|---|---|
| Burglary home person present | F1 | 18 §3502(A) | 48 – 96 months confinement; 2 years probation consecutive to period of confinement on all charges |

[3] The Driving Under Suspension, a summary offense, conviction was imposed by the trial court, and no issues have been raised on appeal related to said conviction, and therefore, all issues concerning the Driving Under Suspension conviction are waived.

[4] At that sentencing hearing, the Judge Coll imposed an aggregate sentence of confinement of 23 years 9 months minimum to 47 years maximum.

| Criminal Conspiracy to Commit Burglary | F1 | 18 §903 | 27 - 54 months consecutive confinement |
| Receiving Stolen Property | F3 | 18 §3925(A) | 42 – 84 months consecutive confinement[5] |
| Driving Under Suspension (DUI related) | S | 75 §1543(B)(1) | 60 days consecutive confinement; $500.00 fine |

On May 14, 2019, following protracted PCRA proceedings, Appellant's direct appeal rights were reinstated, and on June 11, 2019, Appellant filed this appeal from the July 11, 2013 Judgment of Sentence. On August 2, 2019, Appellant filed a 1925(b) Statement, alleging the following errors[6]:

1. Whether the evidence introduced at trial is insufficient to convict the Defendant of the crimes of Burglary, Criminal Conspiracy to commit Burglary and Receiving Stolen Property. Evidence with respect to Burglary and Criminal Conspiracy showed only that the Defendant was present while the co-defendant was in the process of breaking open sliding "French Doors" and that the Defendant fled. No evidence was introduced to demonstrate that Defendant entered the residence, removed items or assisted the co-defendant in any fashion. Evidence is insufficient to the extent that it only demonstrates Defendant's presence and flight.

2. Whether the Honorable Trial Court erred and abused its discretion in reciting to the jury certain facts said to establish the overt act needed to

---

[5] *Additional Conditions*: Comply with Rules of Probation and Parole, pay restitution to Lisa and Edward Morgan and Erie Insurance (joint and several with co-defendant Andrew Zampitella), submit to DNA testing, not RRRI eligible.

[6] No issues were raised by Appellant concerning the conviction for Driving Under Suspension (DUI related).

3

prove the crime of Criminal Conspiracy. The trial court's recitation of these facts included "driving the van to the scene of the burglary. Being present when Zapatella (sic) broke through the French door…" and "[p]erhaps entering the house as well and performing actions there." (N.T. Trial April 11, 2013 p. 65). This recitation violated the Defendant's right to Due Process of Law as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 Sections 8 and 9 of the Pennsylvania Constitution, by invading the province of the jury as the sole finders of the facts, and deprived the Defendant of the presumption of innocence, in that the instruction informed the jury that the Commonwealth had in fact proven this element of the crime of Conspiracy. The court had previously instructed the jury on the elements of the crime of Conspiracy so the second instruction during which certain facts were highlighted, was not necessary. The instruction improperly and incorrectly informed the jury that these facts had been charged in the Information as tending to prove an overt act; to the contrary, the Information does not recite facts alleged to show an overt act but merely recites the Conspiracy statute.

3. Whether the Honorable Trial Court committed error of law and abuse of its discretion, imposed a sentence in violation of 42 Pa.C.S. Section 9721(b), and deprived the Defendant of Due Process of Law as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 Sections 8 and 9 of the Pennsylvania Constitution, when, in imposing sentence for the crime of Receiving Stolen Property, the court considered an impermissible factor. The offense at issue was based on an allegation of possession of personal items stolen during a prior, unrelated Burglary, for which the Defendant was neither charged nor convicted. The trial court manifested its assumption the Defendant had in fact committed the prior unrelated Burglary and sentenced Defendant to the statutory maximum and in excess of the Sentencing Guidelines, based on its finding that Defendant should be punished for the Burglary by a more severe sentence for Receiving Stolen Property.

4. Whether the aggregate consecutive sentences imposed upon the Defendant are overly harsh and manifestly excessive, based as they were solely on the serious nature of the crime, without consideration of

mitigating factors and rehabilitative needs attendant to the Defendant as well as his prospects for rehabilitation.

This appeal lacks legal merit; Judgment of Sentence should be affirmed.

### a. Burglary

The Crimes Code defines Burglary in relevant part:

(a) Offense defined.--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
(1)...
    (ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present...

18 Pa.C.S. § 3502(A)(1)(ii). To establish Appellant committed the offense of Burglary, the Commonwealth must prove beyond a reasonable doubt Appellant, intending to commit the crime of theft, entered the residence at 889 Red Hill Road, Aston, PA, and someone was in the residence.

### b. Criminal Conspiracy

The Crimes Code defines Criminal Conspiracy in relevant part:

(a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

5

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

...

(e) Overt act.--No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903. To establish Appellant committed the offense of Criminal Conspiracy to Commit Burglary, the CW must prove beyond a reasonable doubt Appellant acted with another (to wit, Andrew Zampitella) to commit the crime of burglary, and an overt act in pursuance of the conspiracy is alleged and proved to be done by one of the conspirators.

### c. Receiving Stolen Property

The Crimes Code defines Receiving Stolen Property in relevant part:

(a)   Offense defined.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925 (a). To establish the Appellant committed the offense of Receiving Stolen Property, the CW must prove beyond a reasonable doubt Appellant intentionally received, retained, or disposed of another's movable property knowing it has been stolen or believing it has probably been stolen.

6

## II. TRIAL SUMMARY

The record of the jury trial in this matter reveals that the Commonwealth presented a clear, compelling, and succinct case for the Appellant's guilt and convictions. At trial, the Commonwealth elicited testimony from Austin E. Morgan, Special Agent David Peifer, Detective Joseph Walsh jr., Edward J. Morgan, Sargeant Michael Ruggieri, Detective Joseph Nardone, and Loretta Drimak. The officers are highly trained, experienced, and knowledgeable of crimes and offenses, and notably burglary and related offenses. The Commonwealth presented a highly cogent theory of the case against the Appellant woven together from the direct observations of the officers, the totality of the circumstances they found upon arrival at the scene of the burglary, and presented to the jury information concerning Appellant and his co-conspirator who were seen running from the back of the house, broken doors on the house, a pry bar, a pillow case filled with jewelry boxes, and having obtained and executed a search warrant for Appellant's van, more items connected to a separate burglary.

A review of the pertinent trial record reveals the following:

**a. Testimony of Austin E. Morgan, who resides at 889 Red Hill Road, Aston, PA.**

Austin Morgan (Morgan) testified that he lives with his parents, Ed and Lisa Morgan, and sister, Olivia Morgan, at 889 Red Hill Road, Aston, Pennsylvania, and he has lived there for his entire life. *See* April 10, 2019 Notes of Testimony at p. 31.

Morgan testified on May 30, 2012, a little after 12:30 p.m., he was at home in the basement, and he heard a loud bang at the basement doors, which were closed. *Id.* at p. 32. Morgan testified when he looked through the window on the door, someone was looking in through the window. *Id.* at p. 33. Morgan testified he went upstairs to the kitchen to see "if there was a car there or something, some use—a worker, maybe someone was coming to estimate." *Id.* at p. 34. Morgan testified he saw a white van located directly outside of his house and he saw co-defendant Andrew Zampitella with a crowbar in the door "and he was busting through" and Appellant was directly behind Zampitella. *Id.* at p. 36. Morgan identified Appellant. *Id.* Morgan testified he got his cell phone, went out the door where he first saw co-conspirator Zampitella, went to the neighbor's house, called the police, and waited. *Id.* at p. 37. Morgan testified he told the 911 operator two men broke into the house and send the police. *Id.* at 38. Morgan testified law enforcement, Detective Peifer, showed up within 30 seconds, and told Morgan to get in his car and stay on the phone with the operator. *Id.* at p. 38. Morgan testified Detective Peifer drove Morgan back to his house and pulled into the driveway, and when Detective Peifer got out of the car, Morgan called his father. *Id.* at p. 39. Morgan testified Appellant did not try to stop co-conspirator Zampitella from entering the house. *Id.* at p. 40. Morgan testified eventually he observed Appellant and co-conspirator Zampitella come from around the house. *Id.* On cross-examination, Morgan testified he never encountered either

8

Appellant or co-conspirator Zampitella inside the house because he "booked it". *Id.* at p. 46.

### b. Testimony of Special Agent David Peifer, Bureau of Special Investigations, Office of the Attorney General of Pennsylvania

Special Agent David Peifer (Peifer) testified since February 4, 2013, he has been employed as the Special Agent in charge of the Bureau of Special Investigations for the Pennsylvania Attorney General's Office, and for the previous 35 years he was Lieutenant with the Criminal Investigation Division of the County of Delaware Office of the District Attorney. *Id.* at p. 50. Peifer testified he was actually driving on Red Hill Road when he received the alert for the burglary in progress, and he immediately responded. *Id.* at p. 51. Peifer testified he observed Defendant and co-conspirator Zampitella "heading toward the wooded area, moving at a fast pace, almost like a crouched running." Peifer testified he ordered them down at gunpoint, and both went to the ground. *Id.* at p. 53. Peifer identified Appellant as one of the persons he observed in the incident. *Id.* at p. 54. Peifer testified Appellant had a pair of rubber gloves in his back pocket, and co-conspirator Zampitella also had the same type of gloves. *Id.* at p. 55. Peifer testified he went back to the house and saw damage to the back French doors, a yellow crowbar, and pillowcase with jewelry and coins inside the door. *Id.* at p. 59. Peifer testified he went to the master bedroom and saw the drawers pulled out and stuff strewn about. *Id.* Peifer further testified he arrived very quickly and be believed more than one person was involved

9

inside the home because "that was a lot for one person to do at one time." *Id.* at p. 66.

### c. Testimony of Detective Joseph Walsh, Aston Township Police Department/Criminal Investigation Division of the Delaware County District Attorney's Office

Detective Joseph Walsh (Walsh) testified since March 18, 2013, he has been employed by the Criminal Investigation Division of the Delaware County District Attorney's Office, and for approximately the previous five years he was employed as a police officer for the Aston Police Department. *Id.* at p. 71. Walsh testified he responded to the burglary in progress call, and when he arrived at 889 Red Hill Road in Aston, PA, he assisted Peifer. *Id.* at p. 72. Walsh identified Appellant as one of the individuals on the ground by Peifer. *Id.* at p. 73. Walsh testified he arrested co-conspirator Zampitella, placed him in handcuffs, and saw a pair of gloves lying on the ground next to co-conspirator Zampitella; Walsh testified Officer Jones took Appellant into custody and found a similar or same type of work gloves in his pocket. *Id.* at p. 75. Walsh testified no fingerprints were collected from the scene because both Appellant and co-conspirator Zampitella were found with gloves, *id.* at p. 79, and a typical reason to not collect fingerprints at the scene of a crime is when the offenders are caught on the scene. *Id.* at p. 80.

**d. Testimony of Edward J. Morgan, who resides at 889 Red Hill Road, Aston, PA**

Edward J. Morgan (E.J. Morgan) testified he has lived at 889 Red Hill Road, Aston, PA for twenty-one years. *Id.* at p. 81. E.J. Morgan testified when he arrived at his house there were police vehicles and a black Suburban vehicle in his driveway, and his son was in the back of the Suburban. *Id.* at p. 82. E.J. Morgan testified he saw the broken French doors, pillowcase, and wood, from the side of the door with the lock, on the floor, *id.* at p. 83, and before the incident the doors were not broken *Id.* at p. 84. E.J. Morgan testified it cost him approximately $3,000.00 to repair the doors. *Id.* at p. 85. E.J. Morgan testified his bedroom was clean and tidy, and the beds were made before he went to work that day. *Id.* E.J. Morgan testified their house is immaculate and after the burglary incident, his bedroom appeared ransacked and things were missing and in disarray, including the pillowcase removed from the pillow. *Id.* at p. 88. E.J. Morgan testified he does not know did Appellant or co-conspirator Zampitella, nor did he give them permission to be in his house or take his possessions. *Id.* at p. 94, 95.

**e. Testimony of Sergeant Michael Ruggieri, Sergeant Supervisor of the Detective Unit, Aston Township Police Department, Aston, PA**

Sergeant Michael Ruggieri (Ruggieri) testified he is Sergeant Supervisor of the Detective Unit for the Aston Township Police Department and he has been employed by the Aston Police Department for the past 16 years, and before that he

11

was employed as a police officer for the Chester Police Department. *Id.* at p. 100, 101. Ruggieri testified on May 30, 2012 he responded with Detective Nardone to the burglary scene at 889 Red Hill Road in Aston, PA, and assisted in processing the scene including photographing the scene and interviewing Appellant and co-conspirator Zampitella at Aston police headquarters. *Id.* at p. 101. Ruggieri testified Appellant was given his Miranda warnings, Appellant stated he drove to 889 Red Hill Road in Aston, PA, and co-conspirator Zampitella was accompanying him the vehicle, and he stated he did not know why he pulled into the driveway. *Id.* at pp. 102, 106. Ruggieri testified Appellant stated no one saw him shoulder the door, and he was 100 feet away from the house when he was arrested. *Id.* at p. 106. Ruggieri testified at 5:00 p.m. on May 30, 2012, he executed a search warrant on the white van that was in the driveway at the scene of the burglary, and he recovered a light colored pillowcase containing jewelry, watches, coins, and other items, as well as two cell phones from the console. *Id.* at pp. 107, 110, 111, 116, 117. Ruggieri testified the items from the van were given to the Upper Darby Police Department because they were items from a burglary that occurred in Upper Darby, PA. *Id.* at p. 117. Ruggieri also testified the van is registered to Appellant's estranged wife. *Id.* at pp. 109, 110.

12

**f. Testimony of Detective Joseph Nardone, Aston Township Police Department, Aston, PA**

Detective Joseph Nardone (Nardone) testified for the last six years he has been employed as a detective for the Investigations Unit at the Aston Township Police Department, and before that he worked as a law enforcement officer for Upper Darby and Chester Housing Authority. *Id.* at p. 122. Nardone testified he spoke to Austin Morgan, and got a written statement, and then "went into evidence collection." *Id.* at p. 125. Nardone testified the house was very neat except for the bedroom, and he observed the open drawers, and the closet and drawers were "riffled through". *Id.* at p. 127. Nardone testified he didn't test for fingerprints because of the gloves that were found with Appellant and co-conspirator Zampitella and there was an absence of smudges. *Id.* at pp. 131, 132, 134. Nardone testified in his opinion based on his experience dealing with burglaries in his position as a detective, and because of the size of the bedroom and the areas that were entered, and because of the fast response from the police, he did not think this burglary could have been a one man job. *Id.* at pp.136, 137.

**g. Testimony of Loretta Drimak, who resides in Delaware County, PA**

Loretta Drimak (Drimak) testified she lives in Upper Darby, Delaware County, PA with her husband and two children. *See* April 11, 2013 Notes of Testimony at p. 9. Drimak testified that on May 30, 2012, she left her residence around noon and returned at 3:15 p.m. *Id.* at p. 10. Drimak testified when she walked

13

into her kitchen, she observed the door to the sunroom ajar and noticed the window smashed, and the sliding glass door from the sunroom to the deck was wide open. *Id.* Drimak also testified this was not the same condition as when she left at noon. *Id.* Drimak testified she called the police and reported a break in. *Id.* at p. 11. Drimak testified her master bedroom had been ransacked, and she identified several items, including jewelry, watches, coins, and a pillow case, that were removed without her permission from her residence. *Id.* at p. 12, 13.

Evidence including testimony, physical evidence actually seized at the scene, including the crowbar, and photographs of the scene was presented to the jury. *Id.*, generally. Cross-Examination did not impugn any of the witness clear and candid testimony. *Id.*

## III. DISCUSSION

**a. Appellant's challenge to the sufficiency of the evidence for his conviction for burglary, conspiracy, and receiving stolen property lacks legal merit and judgment of conviction should be affirmed. The evidence at trial sufficiently, clearly, convincingly, and beyond a reasonable doubt demonstrates the Appellant promoted, facilitated, conspired, and planned, and committed the crimes charged and therefore, Appellant's various sufficiency challenges must fail. Appellant's conviction should be affirmed.**

The standard of review for a challenge to the sufficiency of the evidence is well-settled:

> In reviewing sufficiency of evidence claims, the Pennsylvania Superior Court must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in

14

the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. *Commonwealth v Brown*, 886 A.2d 256 (Pa. Super. 2005); *Commonwealth v. Vetrini*, 734 A.2d 404, 406-407 (Pa. Super. 1999). The Pennsylvania Superior Court does not weigh or substitute its judgment for that of the fact finder. *Id.* Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. *Id.* When the court is sitting as the finder of fact, it is presumed inadmissible evidence is disregarded and only relevant and competent evidence is considered. *Commonwealth v. Gonzales*, 609 A.2d 1368, 1371 (1992). Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise.

Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact finder is free to believe all, part, or none of the evidence presented at trial. *Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011), appeal denied, 44 A.3d 1161 (Pa. 2012). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*enbanc*).

The Pennsylvania Superior Court determines whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable

inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt when reviewing sufficiency challenges. *See Commonwealth v. Brown,* 23 A.3d 544, 559 (Pa. Super. 2011) (en banc). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (quoting *Commonwealth v. Hutchinson,* 947 A.2d 800, 805-06 (Pa. Super. 2008)).

The Commonwealth's theory as to Appellant's illegal participation in the crimes of Burglary and Conspiracy and Receipt of Stolen Property is Appellant drove his van to 889 Red Hill Road, Aston, PA, was observed by Morgan standing with co-conspirator Zampitella as he was prying the door with a crowbar to gain access to the residence, and specifically he was not observed in any way attempting or encouraging co-conspirator to stop his actions or otherwise impeding co-conspirator Zampitella's progress in his attempt to break into the residence, was observed running with co-conspirator Zampitella from the back of the residence and in the same direction. The Commonwealth included as part of its theory: a pillowcase with valuable items was found at the door on the inside of the residence; testimony from witnesses familiar with investigating burglaries revealing one person alone could not have committed that amount of ransacking and damage in the amount of time (30 seconds) between the 911 call and arrival of police; and upon execution of

16

a search warrant for the van, items were recovered identified as stolen in a burglary earlier that day.

Appellant's challenges to the sufficiency of the evidence of burglary, conspiracy, and receiving stolen property are devoid of merit when considered against the jury's verdict of guilty in light of all of the evidence presented at trial.

Appellant challenges sufficiency of the evidence alleging evidence with respect to burglary and conspiracy showed only Appellant's presence when co-conspirator Zampitella was in the process of breaking open sliding "French Doors" and Appellant's flight. Appellant alleges evidence only demonstrates his presence and flight, not participation, and no evidence was introduced to demonstrate that he entered the residence, removed items or assisted the co-conspirator Zampitella in any fashion. Appellant attacks the sufficiency of the evidence he participated, entered the residence, removed items from the residence, and assisted co-conspirator Zampitella in any fashion.

In his challenge to the sufficiency, Appellant takes issue with the evidence of the conspiracy in this case, compelling this court to examine the evidence of conspiracy elicited at trial. "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy."

17

*Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id. See also Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa. Super. 2013).

In this case, the jury chose to find the facts both Appellant and co-conspirator Zampitella together were present at 889 Red Hill Road, Aston, PA to commit burglary. The testimony of Morgan that Appellant and co-conspirator Zampitella were together at the door, the crowbar found on scene, the broken doors, Morgan's observation and identification of Appellant standing at the door with co-conspirator Zampitella, arrest of defendant along with co-conspirator Zampitella following their attempt to flee, the ransacked house together with testimony by law enforcement investigating the scene that more than one person had to be involved with the ransacking and burglary, items found in the pillow case by the rear door made it clear and conclusive to the jury Appellant was involved in the Burglary along with co-conspirator Zampitella. The testimony and evidence at trial established Appellant was present at the scene not as an unwitting bystander but as a co-conspirator

18

engaging in the commission of the burglary, standing right behind co-conspirator Zampitella, not attempting to get co-conspirator Zampitella to stop, testimony that the amount of destruction in such a short period of time rises to the conclusion more than one person was inside the residence, and not giving to Appellant and co-conspirator Zampitella permission to come onto the property, break doors, enter residence, or ransack and remove items.

The jury concluded based on the evidence presented Appellant participated in the burglary and conspired with co-conspirator Zampitella to drive to 889 Red Hill Road, Aston, PA, break the French doors to gain access to the inside of the residence, enter the residence, ransack the rooms and remove without permission items of value that were the property of the residents who live at the residence.

The jury also concluded Appellant was in receipt of stolen property when the items found pursuant to the search warrant in a pillow case inside Appellant's van were identified by the true owner Drimak as having been taken without permission from her residence earlier in the day.

The jury as fact-finder finding Appellant guilty of the criminal offenses obviously found all of this to be true. The evidence of Appellant's guilt for committing the crimes of burglary, conspiracy to commit burglary, and receiving stolen property is overwhelming. Through observation of lay witnesses and law enforcement, execution of a duly authorized search warrant, and the evidence and

19

testimony presented at trial, it is clear Appellant and co-conspirator Zampitella were present at 889 Red Hill Road, Aston, PA for illicit and illegal purposes. The victims of these crimes along with law enforcement personnel ended a crime spree perpetrated by Appellant and co-conspirator Zampitella. The Commonwealth elicited testimony at trial highlighting and underscoring the evidence. Appellant offered no rebuttal or critical attack on any of the witnesses' testimony. It is clear from the verdict the jury properly accepted the testimony of the law enforcement officers, victims and witnesses, who testified on behalf of the Commonwealth. The facts and circumstances here, taken in a light most favorable to the Commonwealth as the verdict winner, were sufficient to sustain the Appellant's convictions for burglary, conspiracy to commit burglary, and receiving stolen property. This court concludes the evidence is sufficient to demonstrate burglary, conspiracy to commit burglary, and receiving stolen property. For all of the foregoing reasons, Appellant's challenge to the sufficiency of the evidence concerning his active participation in the commission of the offenses is devoid of merit.

**b. The trial court did not commit error nor abuse its discretion in providing instructions to the jury and imposing sentence upon Appellant. Appellant's conviction and judgment of sentence should be affirmed.**

The standard of review for abuse of discretion is well-settled:

"An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly

20

unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, (Pa. Super. 2017), *Commonwealth v. Antidormi*, 84 A.3d 736, 749–50 (Pa. Super. 2014) (citations omitted). Rather, an abuse of discretion exists if the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, or if it fails to apply the law or was motivated by partiality, prejudice, bias, or ill will. *Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). If the record adequately supports the trial court's reasons and factual basis, the court does not abuse its discretion. *Ambrogi v. Reber*, 932 A.2d 969 (Pa. Super. 2007).

### 1. The sentencing court did not abuse its discretion when it instructed the jury on the crime of conspiracy.

Appellant raises the issue whether the trial court erred and abused its discretion in reciting to the jury certain facts said to establish the overt act needed to prove the crime of Criminal Conspiracy. Appellant points to the trial court's recitation of these facts included "driving the van to the scene of the burglary. Being present when Zapatella (sic) broke through the French door..." and "[p]erhaps entering the house as well and performing actions there." (N.T. Trial April 11, 2013 p. 65). Appellant claims this recitation invaded the province of the jury as the sole finders of the facts, and deprived Appellant of the presumption of innocence, in that the instruction informed the jury that the Commonwealth had in fact proven this element of the crime of conspiracy. Appellant also alleges the court had previously

21

instructed the jury on the elements of the crime of conspiracy so the second instruction, during which certain facts from the trial were highlighted, was not necessary. Appellant claims the instruction improperly and incorrectly informed the jury that these facts had been charged in the Information as tending to prove an overt act. Appellant's claim is devoid of merit.

In *Commonwealth v. Cook* 952 A.2d 594 (Pa. 2008), in reviewing a challenged jury instruction, the court stated: it must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue; an instruction will be upheld if it clearly, adequately, and accurately reflects the law; and the trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law. *See also Commonwealth v. Hudson*, 314 A.2d 231 (Pa. 1974) (court instructed jury it was the sole judge of fact, and should be guided by its own recollection of evidence if it differed from that of the judge and where court gave jury a complete and correct charge on the issue of causation, portion of charge in which judge stated that he recalled that defense witness, called to show that death was not caused by bullet which defendant fired, conceded that each of the intervening causes stemmed from a step in the course of treatment did not remove the issue of causation from the jury); *Commonwealth v. Miller*, 448 Pa. 114, 290 A.2d 62 (1972) (court's charge free of error when it provided an accurate factual

22

summary of the testimony given and contained no suggestion that the jury return a verdict of guilty).

A review of the Notes of Testimony reveals the trial judge provided only one, albeit lengthy, instruction to the jury relating to conspiracy. *See* April 11, 2013 Notes of Testimony at pp. 61-66. The trial judge used accurate facts elicited from witnesses who testified during the trial to help the jury in its deliberations. Importantly, the trial judge emphasized these facts were "alleged", using the phrase several times during that part of his jury instructions. *Id.* at p. 65. Notably, the trial judge made it clear the jurors are the fact finders: "…you are the exclusive judges of the facts in this case" and "It's your duty to arrive at a decision on the facts," *id.* at pp. 45, 46; using the language "having a jury … stand in judgment of the facts" and "…in deciding the facts…". *Id.* at p. 74. In addition, the trial court stated to the jury, "…I have made rulings on the evidence. You should not infer that was trying to send you any kind of signal … I have…no intention of signaling you any judgment on my part about the evidence. **It's solely your responsibility**." (Emphasis added). *Id.* at p. 75. It is clear the trial judge allowed the jury to determine the facts of the case. The judge recognized the members of the jury as the triers of all the facts in the case, demonstrated by his repeated use of the terms "alleged" and "perhaps" in conjunction with those facts. Finally, a review of the trial judge's instructions to the jury reveals that the judge used the term "information" when he stated "the

23

information alleges that the crime of burglary was the object of the conspiracy" p. 64. A review of count 6 on the Information does charge Appellant with "Conspiracy-Burglary." Notwithstanding the trial judge's use of the term "information", the record reveals when the trial judge states, "The information alleges that the following actions were overt acts in furtherance of the conspiracy," *id.* at p. 65, it is clear he uses the term "information" is used as a commonplace and broad, general term, defined by Merriam-Webster as "communication or reception of knowledge or intelligence" and "facts/data" and by Oxford Dictionary as "facts provided or learned about something or someone," and not as the technical, legal term "Informations" referring to formal charging documents. *See* Pa.R.Crim. P. 103. The trial court's instruction was free of error and the trial court did not abuse it discretion. Appellant's claim lacks merit and judgment of conviction should be affirmed.

### 2. The sentencing court did not abuse its discretion in imposing Appellant's sentence on the receiving stolen property conviction.

Appellant alleges the sentencing court committed error of law and abuse of its discretion when it imposed sentence for the receiving stolen property conviction: considering the allegation Appellant had possession of personal items stolen during a prior, unrelated burglary, for which Appellant was not charged nor convicted. Appellant alleges trial court made the assumption Appellant had in fact committed the prior unrelated burglary and sentenced him to the statutory maximum and in

24

excess of the Sentencing Guidelines, based on its finding that Appellant should be punished by a more severe sentence for receiving stolen property.

A sentencing court must consider the sentencing guidelines, but also fashion a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 PACS § 9721(b), relating to sentencing generally, provides in relevant part:

> (b) General standards.-- ... the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. ...

42 Pa.C.S.§ 9721(b).

A guideline departure should not be based on the sentencing court's determination that the guideline range is either too harsh or too lenient, but the departure must be based upon the conclusion the conduct underlying the crime differed from the conduct typically associated with that crime so as to render the suggested punishment inappropriate for the particularized facts of the case. *Commonwealth v. Kleinecke*, 895 A.2d 562, 589 (Pa. Super. 2006).

When a sentencing court imposes a sentence outside of the guideline range, the appellate court must review to determine whether the trial court's sentence is unreasonable. 42 Pa.C.S. Section 9781(c)(3). An unreasonable decision is irrational

25

or not guided by sound judgment. *Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007), quoting *The Random House Dictionary of the English Language*, 2084 (2nd ed. 1987).

The imposition of sentence is vested in the discretion of the trial court, and should not be disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that sentence was manifestly unreasonable. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007). Sentencing guidelines, while an aid in imposing sentencing, are advisory and nonbinding, and they do not replace the key determination by the sentencing judge as to whether or not a sentence was reasonable. *Id.* at 962, 964.

On appeal of sentencing decision, appellate court must consider the nature of the offense, along with the history and characteristics of defendant, the opportunity of the sentencing court to observe defendant, the findings upon which the sentence was based, and the sentencing guidelines. *Commonwealth v. Ali*, 197 A.3d 742 (Pa. Super. 2018), appeal denied 207 A.3d 911.

In the present case, Appellant was sentenced for the receiving stolen property conviction, a felony 3, to a term of confinement of 42 month minimum to 84 month maximum. The statutory maximum for a felony of the third degree is not more than seven years. *See* 18 Pa.C.S. § 107(b)(7); therefore the highest minimum sentence is 42 months, and the highest maximum sentence is 84 months. The offense gravity

26

score for the offense of receiving stolen property is 5, Appellant's prior record score is 4. Although the sentence is the maximum statutory sentence available, and it falls outside the guidelines, Appellant does not have to be happy with the sentence he received. During sentencing, the sentencing court stated,

> "...the reason for imposing the statutory maximum upon him is because that the burglary in Drexel Hill form which this stolen property was obtained happened a very short period of time before he and co-conspirator—the Defendant and his co-conspirator initiated the burglary at Red Hill Road in Aston...this man was a professional burglar and that he was choosing his targets with such exactitude and which such foreknowledge, except that he would go from a specific in Drexel Hill to a specific place in Aston Township within minutes of each other and engage in burglaries. The only thing he didn't take into account was the fact that the Red Hill Road property was still occupied...the loot from the burglary was fond in the pillowcase, in the same kind of pattern of using a pillowcase from the house and putting the things inside the pillowcase. And because of the timing, because of the fact that the only charge is Receiving Stolen Property but it should have been Burglary, I'm going to give him 42 to 84 months for that."

The sentencing court departed from the guideline range on the basis the conduct underlying the crime of receiving stolen property differed from the conduct typically associated with that crime, and found the conduct more befitting of the crime of burglary, which carries a greater offense gravity score than the crime of receiving stolen property, and is a felony of the first degree. The sentencing court also imposed sentence taking into consideration the protection of the public against Appellant, gravity of Appellant's offense as it related to the victims and the community, Appellant's crime spree and criminal history, pre-sentence

investigation, likelihood of recidivism, and the unlikelihood Appellant can be rehabilitated. The sentencing court exercised its discretion in departing from the guidelines finding the suggested punishment is inappropriate in this particular case. In this case, the sentence is within the statutory limits for a felony of the third degree.

The trial court's sentence was free of error and the trial court did not abuse its discretion. Judgment of sentence should be affirmed.

### 3. The sentencing court did not sentence Appellant to an overly harsh and manifestly excessive sentence.

Appellant's alleges his aggregate consecutive sentences are overly harsh and manifestly excessive, based as they were solely on the serious nature of the crime, without consideration of mitigating factors and rehabilitative needs attendant to Appellant as well as his prospects for rehabilitation. Rule of Criminal Procedure 705, Imposition of Sentence, provides in relevant part: "when a sentence is imposed on a defendant who is sentenced for another offense, the judge shall state whether sentences shall run … consecutively." Pa.R.Crim.P. 705(B). Appellant's claim is meritless.

A defendant does not have an absolute right to challenge the discretionary aspects of his sentence on appeal. Appeal is permitted only when the appellate court is convinced that there exists a "substantial question" as to whether the sentence violated a specific provision of the Sentencing Code or was contrary to the

"fundamental norms underlying the sentencing process," *Commonwealth v. Johnson*, 873 A.2d 704, 708 (Pa. Super. 2005).

A defendant contending that he is entitled to appellate relief on the basis that his sentence was harsh and excessive faces a heavy burden; a trial court's exercise of its sentencing discretion will not be disturbed on appeal absent a manifest abuse of that discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. The trial court is accorded discretion in imposing sentence because that court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007).

In the instant case, defendant contends that the court's determination that his sentences for burglary, conspiracy to commit burglary, and receiving stolen property would be served consecutively constituted an abuse of discretion. It is, however, well-settled that the mere fact that a court has imposed consecutive sentences fails to establish any entitlement to appellate relief, or even to establish a "substantial question" entitling defendant to appellate review. The imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court, and a challenge to the imposition of consecutive sentences simply does not

29

raise a substantial question. *Commonwealth v. Lloyd*, 878 A.2d 867 (Pa. Super. 2005). Appellant's attempt to raise a substantial question, by alleging the sentencing judge imposed the sentence without consideration of mitigating factors and rehabilitative prospects, is unfounded. Appellant's claims are meritless.

Contrary to Appellant's allegations, Appellant's aggregate sentence is not overly harsh nor manifestly excessive. The sentence imposed was a fair sentence, and it was based on the serious nature of the crimes (felonies), and upon consideration of mitigating factors and rehabilitative prospects. Following hearing and the court's review of the pre-sentence investigation report, the court stated Appellant's sentences for each of the felony charges would run consecutively. The imposition of the consecutive sentences was necessary to impress upon Appellant the wrongful nature of his conduct, and in view of the fact that, *inter alia*: during the burglary in Aston, a minor child was present in the home; Appellant was under supervision for 3 cases at the time of the commission of the May 30, 2012 Aston Township burglary; Appellant was on electronic home monitoring for a sentence imposed on Appellant's receiving stolen property conviction arising out of a July 28, 2011 criminal incident in Haverford Township, Delaware County, Pennsylvania; Appellant is an "excellent candidate for recidivism, " see June 17, 2013 Notes of Testimony at p. 20 and "the sentencing judge found Appellant would not "ever … be rehabilitated." *Id.* at p. 21.

The sentence is not disproportionate or unreasonable in light of the circumstances of this case. Appellant does not allege the sentencing was inconsistent with a specific provision of the Sentencing Code nor the sentencing process contrary to the fundamental norms of how defendants are sentenced in Pennsylvania. Appellant's sentence was not excessively harsh nor manifestly excessive, and it was free of error and the trial court did not abuse its discretion, and there is no substantial question concerning the application of the Sentencing Code or the sentencing process in this case. Appellant's claim lacks merit and judgment of sentence should be affirmed.

## IV. CONCLUSION

For all the foregoing reasons, the Appellant's Judgment of Sentence should be affirmed.

**BY THE COURT:**

**RICHARD M. CAPPELLI, J.**

cc:    A. Sheldon Kovach, Esquire, Attorney for the Commonwealth
      William Wismer, Esquire, Attorney for Appellant

31